UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KENDALL U. LYONS,                                                    6:12-CV-523-TC

Plaintiff,

v.                                                                          ORDER

BENTON COUNTY, a municipal corporation,

Defendant.

COFFIN, Magistrate Judge:

Plaintiff brings claims against defendant Benton County arising out of his detention at the Benton

County Jail on August 13th and August 14th, 2011.  He claims that he suffered an alcohol

detoxification-related seizure during his detention that caused him to fall in a jail cell and strike his

head.  He claims Benton County was deliberately indifferent to his serious medical need of alcohol

detoxification through its polices or customs and its training.  He also claims the County was

medically negligent.

Presently before the court is the County's motion (#19) for summary judgment.

Page 1 - ORDER

## Legal Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  There must be no genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim.  Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000).  In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  Anderson, 477 U.S. at 248.  Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id.  On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted.  Id.

## **Factual Background**

On July 10, 2011, Benton County Jail processed and released plaintiff after he submitted to a breathalyzer and recorded a .23 BAC. Sixteen days later on July 27, 2011, the Jail processed and released plaintiff after he submitted to a breathalyzer and recorded a .29 BAC. Seventeen day s later on August 13, 2011, at approximately 5:30 p.m., plaintiff was booked into the Benton County Jail on a warrant for failing to appear in court on charges of DUII and Reckless Driving. He was intoxicated and recorded a BAC of .236.

Benton County Sheriff Sergeant Collinsworh booked plaintiff into the jail. As part of the booking process, Collinsworth asked plaintiff questions about his health history, including questions about seizures to which he replied in the negative and about alcohol problems to which he answered in the affirmative.[1] Sgt. Collinsworth held plaintiff in the booking area known as the "waiting room." Plaintiff was under nearly constant supervision by Collinsworth until she went off shift at about 9 p.m.

Corporal Morrisette then relieved Collinsworth and continued the observation of plaintiff. Collinsworth briefed Morrisette on plaintiff's status and level of intoxication. Plaintiff was generally awake, watching the deputies in booking. Morrissette spoke with plaintiff a few times, but plaintiff generally sat, stood or paced around. He said he wasn't sleepy and was just bored. Plaintiff's speech was not slurred or unusual. He did not stumble or appear dizzy as he walked around in the waiting room.

---

[1]Although this opinion does not rely on it, it is worth noting that Sgt. Collinsworth believes she also asked plaintiff at this time whether he was going to detox because that is her standard practice and if any detoxification problems had been disclosed, she would have noted it.

Page 3 - ORDER

At approximately 3:00 a.m., Morrissette asked plaintiff how he was feeling and whether he wanted to go into a regular cell to get some sleep.  Plaintiff replied that would be nice.  Morissette also asked plaintiff whether he was going to detox and plaintiff smiled, sort of chuckled and said "no."  He was not exhibiting any signs of intoxication or detoxification.  Morrissette estimated his BAC as between .05 and .10 at the time of the statement.        Morrissette got him his bed roll and hygiene kit and escorted him back into a general population cell.  Plaintiff's eyes dis not appear bloodshot, watery, glassy or at all unusual.  Plaintiff was able to carry his bedroll and hygiene kit without stumbling.  Morrisette asked him if he wanted any reading material and explained that if he were going to detox he should let staff know because there was medication available.

At approximately 5:00 a.m., Morrissette was doing his security rounds and looked in on plaintiff in his cell.  At the time, plaintiff was asleep on his bunk.

At approximately 6:00 a.m., Morrissette entered plaintiff's cell with breakfast.  Morrissette sat plaintiff's breakfast on the table and told him he had breakfast for him.  Plaintiff was sleeping with his back to Morrissette, but stirred, raised up a bit, looked at Morrissette and thanked him for being so nice.  Plaintiff seemed coherent but shaking, and nothing seemed unusual.  Plaintiff made no requests and simply rolled back over.

At approximately 7:00 a.m., Deputy Werdell opened the door to plaintiff's cell and asked if he wanted a shower, to which plaintiff replied in the negative.  Plaintiff was awake and either sitting or standing by his desk.  There was nothing unusual in the conversation with plaintiff .  Werdell spent 15 to 30 seconds with plaintiff during this encounter.

At approximately 8:00 a.m., Deputy Catala did the security round and saw plaintiff standing in his cell looking out the cell door window.  Catala said "Hi" and plaintiff nodded his head

affirmatively.  Deputy Catala did not notice anything unusual about plaintiff's appearance  or his demeanor.

At approximately 9:00 a.m., Deputy Werdell did the security check and noticed nothing unusaul when she looked in plaintiff's cell.

At approximately 9:30, Deputy Werdell did another security check and again noticed nothing unusual when she looked into plaintiff's cell.  At no time did she notice anything unusual about plaintiff's appearance or demeanor.

At approximately 10:38 a.m., Deputy Catala found plaintiff on the floor of his cell during his security round.  He was bloody and unresponsive.  Medics were immediately called at 10:38 and arrived at 10:43 a.m.  In the meantime, deputies put a blanket under plaintiff's head to stop the bleeding.  Plaintiff was transported to the  hospital at 10:55 a.m.  A physician at the hospital determined plaintiff had a seizure that was likely caused by alcohol withdrawal.

### Discussion

§ 1983 Claim

Plaintiff  claims that Benton County was deliberately indifferent to his serious medical need of alcohol detoxification through its policies or customs and its training.

Deliberate indifference is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U. S. 397, 410 (1997).  It requires that correction officers both know of and disregard an excessive risk of harm to the inmate.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Absent a constitutional violation by a municipal employee, there can be no municipal liability under §1983 , even if there exists a policy or custom that might have authorized

Page 5 - ORDER

an unconstitutional deprivation of plaintiff's rights. City of Los Angeles v. Heller, 475 U.S. 796,

799 (1986).

Plaintiff has failed to adequately demonstrate that there is a genuine issue of material fact on the

critical issue of deliberate indifference both at the corrections officer level and the municipal entity

level. Plaintiff essentially argues that the various corrections officers did not ask enough, or the

right, questions of plaintiff and moved him from holding to the general population too soon. This

was the result, he argues, of a custom or practice of Benton County and due to a lack of training.

However, deliberate indifference is lacking.

As for correctional officers, defendant has demonstrated that no correctional officer was

deliberately indifferent to plaintiff's serious medical need. Plaintiff has not shown with specific facts

that there is a genuine issue of material fact that any correction officer both knew of and disregarded

an excessive risk of harm to the inmate.  As set forth in more detail above, plaintiff denied a history

of seizures; plaintiff was under constant supervision for a period of over 9 hours in the waiting room

without any unusual symptoms, plaintiff was asked at least twice if he was going to detox and was

told that if he was going to detox he should let staff know as there was medication available; and

plaintiff was briefly observed on a consistent basis no less than 5 times before his seizure and

interacted with briefly on three of those occasions and nothing unusual was observed. There is no

deliberate indifference present as such requires that corrections staff know of and intentionally

disregard an excessive risk to plaintiff that he would suffer an alcohol related detoxification event

if they failed to act.

Plaintiff notes that plaintiff was at times pacing and suffering from insomnia, but those are

common activities for those in jail and plaintiff did fall asleep. Plaintiff also argues that plaintiff's

Page 6 - ORDER

statements and inaction regarding his own detoxification should not have been relied on as he was intoxicated, but this does not amount to deliberate indifference. As discussed above, corrections officers did much more than rely on plaintiff's statements and plaintiff's inaction as to his own detoxification. .

At best, perhaps there is a negligence claim, but neither corrections officers nor the County entity itself were deliberately indifferent. Even if plaintiff had adequately shown that his constitutional rights were violated in this particular instance by the deliberate  indifference  of an individual officer,(see,  Heller) , plaintiff has not adequately shown the other requirement for this action: i.e.,  Plaintiff has not shown that the County itself was also deliberately indifferent to known or plainly obvious consequences of its policies or customs or its training that caused plaintiff's constitutional rights to be violated .

The County was not deliberately indifferent as there is  no more than a scintilla of evidence that County was put on notice that its approach was constitutionally deficient, much less that constitutional violations were a "plainly obvious consequence." See , Bryan County, 420 U.S. at 404-405. Plaintiff's alcohol withdrawal-related seizure had never before occurred in plaintiff's experience. It had never occurred before at the Benton County Jail. In fact, no other inmate has ever suffered an injury at the Benton County Jail as a result of an alcohol withdrawal-related event.


Negligence Claim

This court declines to exercise supplemental jurisdiction over the remaining  state-law claim as all federal claims have been dismissed. 28 U.S.C §1367 (c)(3); Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in

Page 7 - ORDER

the usual case in which all federal- law claims are eliminated before trial, the balance of factors ...

will point towards declining to exercise jurisdiction over the remaining state-law claims'" (citation

omitted)).    This court has not invested its judicial energies as to the negligence claim to such an

extent that would justify retaining jurisdiction.  Nor is it apparent that judicial economy would be

served by retaining jurisdiction over this case.  Although it might be more convenient for the parties

if the court retained jurisdiction, fairness and comity  would be served by declining jurisdiction.


### Conclusion

Defendant's motion (#19) for summary for summary judgment is allowed to the extent

plaintiff's §1983 claim is dismissed. This court declines to exercise supplemental jurisdiction over

the remaining  state-law claim of negligence.  Defendant's objection (#33) to the supplemental

declaration is denied.  This action is dismissed.

DATED this _____ day of March, 2013  .


_____
THOMAS M. COFFIN
United States Magistrate Judge